**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE:**<br><br>**AIR CRASH AT SAN FRANCISCO, CALIFORNIA, ON JULY 6, 2013** | **MDL No.: 2497**<br><br>**ORDER GRANTING DEFENDANT ASIANA'S MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>**THIS ORDER RELATES TO:**<br><br>*Lin Yang* and *Jing Zhang v. Asiana Airlines, Inc. et al.*<br>Case No. 14-CV-02038<br><br>Dkt. Nos. 780, 800 |

Plaintiffs Lin Yang and Jing Zhang bring this action against defendant Asiana Airlines, Inc. ("Asiana") to recover damages for personal injuries they allegedly sustained while traveling as passengers on board Asiana Flight 214, which crashed on landing at San Francisco International Airport on July 6, 2013. Now before the Court is Asiana's motion to dismiss plaintiffs' claims against Asiana for lack of subject matter jurisdiction pursuant to Fed. R. Civ. Pro. 12(b)(1) and 12(h)(3). (Dkt. No. 780.)[1] On May 31, 2017, plaintiffs filed a separate motion containing various

---

[1] Plaintiffs filed their opposition brief on May 18, 2017. (Dkt. No. 812, "Opp'n to MTD".) Asiana filed its reply on May 25, 2017. (Dkt. No. 813, "Reply ISO MTD".) In connection with Asiana's Reply ISO MTD, Asiana raised objections to several exhibits filed in connection with plaintiffs' Opp'n to MTD, namely Exhibits 6-10 and 13 to the declaration of Mary Schiavo, (Dkt. No. 812-1), pursuant to Federal Rule of Evidence 602. According to Asiana, plaintiffs have not demonstrated personal knowledge required to authenticate these documents. The objection with regard to Exhibit 6 (Asiana's General Conditions of Carriage for Intentional Passenger and Baggage) is **OVERRULED** because this document was created by Asiana and was incorporated by reference into the tickets at issue, which Asiana attached to a declaration filed in connection with its motion to dismiss. (Dkt. No. 780, Declration of Hombum Yi ("Yi Decl."), Exs. A, B.) With regard to the remaining documents, the objection is **SUSTAINED** because plaintiffs' counsel has not demonstrated personal knowledge required to authenticate these third-party documents.

evidentiary objections to the first declaration of Jennifer J. Johnson, (Dkt. No. 814), and exhibits attached thereto, and to the Yi Decl. (Dkt. No. 819.) [2] Also before the Court is plaintiffs' motion to file an amended complaint alleging "Asiana's negligent failure, refusal, delay and/or denial to permit or provide adequate care to Plaintiffs after Plaintiff Zhang was seriously injured and near death after the crash of Asiana Flight 214." (Dkt. No. 800.)

Having carefully considered the pleadings and the papers submitted on these motions, oral argument held on July 28, 2017, and for the reasons set forth below, defendant's motion to dismiss is **GRANTED** and plaintiffs' motion for leave to amend is **DENIED** as moot.

I. **Relevant Background**

This case arises in the context of multidistrict litigation stemming from injuries sustained by all passengers and crew on Asiana Flight 214. (Dkt. No. 105, Notice of Adoption of Master Consolidated Complaint by Plaintiffs Lin Yang and Jing Zhang ("Notice of Adoption of MC") ¶ 2.) Discovery has progressed in the actions brought and the facts described herein are not in dispute (unless otherwise noted.) Plaintiffs' airline tickets list four flights operated by Asiana. Mr. Yang's travel was ticketed electronically as follows:

```
ELECTRONIC TICKET RECORD FROM
AMADEUS
ASIANA AIRLINES  28JAN13      08300666
NKG INTERNATIONAL T T/C CHND001
NK
PNR 1E/JYK920          T SHA/T 021-6
YANG/LIN MR
S CP BRDOFF FLT CLS DATE TIME ST FARE BASIS  NVB NVA BAG
F 1  PVGICN OZ362  V 06JUL 1205 OK VLRT9CN   06JUL 2PC
F 2X/ICNSFO OZ214  V 06JUL 1630 OK VLRT9CN   06JUL 2PC
  3   SURFACE
A 4  LAXICN OZ201  S 20JUL 1340 OK SLRT9CN   06JUL 2PC

V NONENDS NO-MILEUG S NONENDS NO-MILEUG
06JUL13SHA OZ X/SEL OZ SFO M/IT /-LAX OZ X/SEL OZ SHA M/IT E
ND ROE6.227810 XT
16AY216US32XA44XY35YC2024YQ28XFLAX4.5
IT FARE TICKET
TOTALTAX      2609
FOP CASH
TKT NO 988 3230381130    CONJ 1130-1131
```

```
ELECTRONIC TICKET RECORD FROM
AMADEUS
ASIANA AIRLINES  28JAN13
08300666
NKG INTERNATIONAL T T/C
CHND001         NK
PNR 1E/JYK920          T SHA/T
021-6
YANG/LIN
MR
S CP BRDOFF FLT CLS DATE TIME ST FARE BASIS  NVB NVA BAG
A 1X/ICNPVG OZ367  S 21JUL 2000 OK SLRT9CN   06JUL 2PC

V NONENDS NO-MILEUG S NONENDS NO-MILEUG
06JUL13SHA OZ X/SEL OZ SFO M/IT /-LAX OZ X/SEL OZ SHA M/IT E
ND ROE6.227810 XT
16AY216US32XA44XY35YC2024YQ28XFLAX4.5
IT FARE TICKET
TOTALTAX
2609
FOP
CASH
TKT NO 988 3230381131    CONJ 1130-1131
```

---

[2] Pursuant to Local Rule 7-3(a)(1), "evidentiary and procedural objections to the motion must be contained within the brief or memorandum." Plaintiffs have failed to comply with the local rules by filing evidentiary objections in a separate motion. Therefore, Dkt. No. 819 is **STRICKEN**.

2

1 | Ms. Zhang's was similarly ticketed:

[Electronic ticket records from Amadeus for Asiana Airlines, dated 28JAN13, for passenger ZHANG/JING MS, showing flight segments including PVG-ICN OZ362 on 06JUL, ICN-SFO OZ214 on 06JUL, surface segment, LAX-ICN OZ201 on 20JUL, and ICN-PVG OZ367 on 21JUL; ticket numbers 988 3230381134 and 988 3230381135, CONJ 1134-1135.]

(Dkt. 40-3 at 2-3 ("Tickets").) The parties agree that the references signify the following: (1) Shanghai, People's Republic of China, to Seoul, South Korea on July 6, 2013; (2) Seoul to San Francisco, California on July 6, 2013; (3) surface travel; (4) Los Angeles, California to Seoul on July 20, 2013; and (5) Seoul to Shanghai on July 21, 2013. Plaintiffs did not book a flight from San Francisco to Los Angles because plaintiffs planned to travel to Los Angeles by bus or private car. (Dkt. No. 40, Ex. 4 at 91:22-25.) The tickets incorporate by reference Asiana's "General Conditions of Carriage for International Passenger and Baggage." (Dkt. No. 40, Ex. 5 ("General Conditions").) Plaintiffs' tickets were issued at the same time (January 28, 2013), at the same location (202 North Zhong Shan Road in Nanjing, China), and bear sequential ticketing numbers. (*See* Tickers at 2-3 ("CONJ 1130-1131" for Yang tickets and "CONJ 1134-1135" for Zhang tickets); *see also* Yi Decl. ¶ 10, Exs. A and B (time and location of ticket booking).)

Plaintiffs filed their lawsuit on May 2, 2014 and adopted the master consolidated complaint on May 27, 2014. (*See* Notice of Adoption of MC ¶ 3.) Plaintiffs have also filed a lawsuit against Asiana in South Korea, which remains pending. (Dkt. No. 814, Johnson Decl. ¶¶ 3-4.)

## II. Legal Framework

### A. Subject Matter Jurisdiction

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject matter jurisdiction of the Court. *See, e.g., Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039–40 (9th Cir. 2003), *cert. denied,* 541 U.S. 1009 (2004). When subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir. 1986) (holding that "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Accordingly, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 376–78 (1994).

Motions under Rule 12(b)(1) may be either "facial" or "factual." *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000)). In a facial attack, the movant argues that the allegations of a complaint are insufficient to establish federal jurisdiction. *Id.* By contrast, a factual attack or "speaking motion" disputes the allegations that would otherwise invoke federal jurisdiction. *Id.* In resolving a factual attack, district courts may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id.* (citing *Savage,* 343 F.3d at 1039 n. 2). Courts consequently need not presume the truthfulness of a plaintiff's allegations in such instances. *Id.* (citing *White,* 227 F.3d at 1242). Indeed, "[o]nce the moving party has converted a motion to dismiss into a factual motion by presenting affidavits or other evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage,* 343 F.3d at 1039 fn. 2). Further, the existence of disputed material facts will not preclude a trial court from evaluating for itself the merits of jurisdictional claims, except where the jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits. *Augustine v. United States,* 704 F.2d 1074, 1077 (9th Cir.1983) (citing *Thornhill Publ'g Co. v. Gen. Tel. Corp.,* 594 F.2d 730, 733–35 (9th Cir.1979)).

//

**B.     Montreal Convention**

The 1929 Convention for the Unification of Certain Rules Relating to International Transportation by Air ("Warsaw Convention") established a treaty governing the rights and liabilities of passengers and carriers in international air transportation. *See El Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 161 (1999). The 1999 Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 ("Montreal Convention") is the successor treaty to the Warsaw Convention. *Hosaka v. United Airlines, Inc.*, 305 F.3d 989, 996 (9th Cir. 2002). The Montreal Convention completely replaces the Warsaw Convention, but retains many of the same provisions and terms. *See* Montreal Convention, *reprinted in* S. Treaty Doc. No. 106–45, 1999 WL 33292734 (2000), Art. 55. Although the Warsaw Convention is no longer in effect, courts in the United States continue to rely on cases interpreting the Warsaw Convention when a provision is materially similar to that in the Montreal Convention. *See Narayanan v. British Airways*, 747 F.3d at 1125, 1127 (9th Cir. 2014); *Phifer v. Icelandair*, 652 F.3d 1222, fn. 1 (9th Cir. 2011); *Best v. BWIA W. Indies Airways Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008) ("Because many of the provisions of the Montreal Convention are taken directly from the Warsaw Convention and the many amendments thereto, the case law regarding a particular provision of the Warsaw treaty applies with equal force regarding its counterpart in the Montreal treaty . . . .").

The Montreal Convection covers "all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, Art. 1(1); *see also Narayanan*, 747 F.3d at 1127. Further, it provides the "exclusive basis for a lawsuit against an air carrier for injuries arising out of international transportation." *Kruger v. United Airlines, Inc.,* 481 F. Supp.2d 1005, 1008 (N.D. Cal. 2007). In interpreting the Montreal Convention, courts begin by looking at its text. *Narayanan*, 747 F.3d at 1127. Pursuant to the Montreal Convention, a passenger must bring a damages action against an air carrier in one of five jurisdictions. Article 33 of the Convention provides, in relevant part:

> (1) An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either [1] before the court of the domicile of the carrier or of [2] its principal place of business, or [3] where it has a place of business through which

> the contract has been made, or [4] before the court at the place of destination.
>
> (2) In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in [5] the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

Montreal Convention, Art. 33(1), (2) (brackets supplied). The Convention thus "appears to confer jurisdiction on those countries with a particular interest in the litigation or with a particular competency, because of the location of the parties or the evidence, to decide the matter." *In Re Air Crash Disaster Near Warsaw, Poland, on May 9, 1987*, 760 F. Supp. 30, 32 (E.D.N.Y. 1991). "The country of ultimate destination of the passenger is presumably included because that country, where the passenger is likely to have an enduring if not permanent relationship, has a particular interest in the action . . . ." *Id.* Plaintiffs bear the burden of proof for establishing jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990). United States courts lack subject matter jurisdiction over a passenger's claims unless the passenger can show that at least one of the five territories listed above is in the United States. *Hosaka v. United Airlines, Inc.*, 305 F.3d 989 (9th Cir. 2002); *Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1002 (9th Cir. 1987); *Hornsby v. Lufthansa German Airlines*, 593 F.Supp.2d 1132, 1135-1136 (C.D. Cal. 2009).

**C.     Leave to Amend**

Under Federal Rule of Civil Procedure 15(a)(2), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. of Civ. Pro. § 15(a)(2). The Ninth Circuit has held that "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). "Four factors are commonly used to determine the

propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment." *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 186 (9th Cir. 1987) (citing *Loehr v. Ventura Cty. Cmty. Coll. Dist.,* 743 F.2d 1310, 1319 (9th Cir. 1984)).

**III. Discussion**

    **A. Motion to Dismiss**

Defendant moves to dismiss plaintiffs' claims on the ground that plaintiffs cannot show that any of the five territorial prongs specified in the Montreal Convention supports jurisdiction in the United States. The Court treats defendant's motion as a factual attack on subject matter jurisdiction and therefore considers all admissible evidence in the record.

Plaintiffs effectively concede that the first three options do not provide jurisdiction here. (Opp'n to MTD at 17.) Instead, plaintiffs primarily focus on the fourth option in arguing that their "place of destination" was in the United States. Plaintiffs also aver that the fifth option is satisfied because plaintiffs were *de facto* residents of the United States during the three months that Ms. Zhang was receiving medical care.

        1. *Place of Destination*

The Court first considers whether plaintiffs can satisfy their jurisdictional burden under the fourth prong of Article 33 of the Montreal Convention, which allows passengers to file suit in the jurisdiction of their "place of destination."

For the purposes of Article 33, the "place of destination is determined by discerning the "intention of the parties as expressed in the contract of transportation, i.e., the ticket or other instrument." *Sopcak*, 52 F.3d at 819; *see also Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 167-69 (2d Cir. 1997). Contracts of transportation "should be interpreted according to the objective, rather than the subjective, intent of the parties." *Id*. Although "a passenger's intent is accorded considerable weight in ascertaining the final destination, 'when a contract is unambiguous, the instrument alone is taken to express the intent of the parties.'" *Id.* (quoting *Swaminathan,* 962 F.2d

at 389). The parties' dispute centers on the relevance and legal analysis, if any, of an "open jaw"[3] ticket. The parties agree that the "place of destination" for a round trip flight is the place of origin for the purposes of the Montreal Convention. Plaintiffs argue, however, that Mr. Yang and Ms. Zhang were not traveling on round trip tickets but rather on "open jaw" itineraries, *i.e.*, one side of the "jaw" being the inbound flight to the United States (Shanghai to Seoul to San Francisco) and the outbound from the United States being the other (Los Angeles to Seoul to Shanghai). Plaintiffs characterize the itinerary as two separate contracts of transportation, the first of which had a "place of destination" in San Francisco for the purposes of the Montreal Convention. Defendant counters that the exclusive "place of destination" for an undivided transportation is the "ultimate destination," namely Shanghai. *See In re Alleged Food Poisoning,* 770 F.2d at 6. Defendant bases this classification on the argument that plaintiffs' air travel should be deemed a "single undivided transportation" with one place of destination, *i.e.* the "*ultimate* destination." *Id*. (emphasis in original).

The "place of destination" for a "single operation of undivided transportation" is the ultimate destination. *See Petrire*, 756 F.2d at 266 (internal quotations omitted). A mere "agreed stopping place" does not constitute a "place of destination" because a "single, undivided transportation has only one beginning and one end . . . [this is] logically clear . . . ." *See In re Alleged Food Poisoning,* 770 F.2d at 6; *see also Petrire v*, 756 F.2d at 266; *Vergara,* 390 F. Supp. at 1269 (D. Neb. 1975) (noting that "in a trip consisting of several parts it is the ultimate destination that is accorded treaty jurisdiction"). A review of the relevant cases reveals that courts consider several factors in determining whether transportation has been regarded by the parties as a "single operation," namely when and where the tickets were issued; whether the tickers were issued sequentially, and anticipated duration of stopover. *See Petrire*, 756 F.2d at 266; *In re Alleged Food Poisoning,* 770 F.2d at 6; *Haldimann v. Delta Airlines, Inc.*, 168 F.3d at 1326.

---

[3] "Open jaw" itineraries are similar to round trip itineraries but contain at least one open leg for which the passenger must secure his or her own means of transportation. For example, an open jaw itinerary could contain two legs, (i) Tokyo, Japan to Seattle, Washington and (ii) Vancouver, Canada to Tokyo, Japan.

8

Although no court has ruled on the specific issue of whether an open jaw itinerary constitutes a single contract with one destination, several federal courts have found that facts similar to those here constitute a single contract with one destination. *Petrire* is instructive. There, the Second Circuit considered whether two ticket booklets[4] issued simultaneously by a single carrier constitute a single, undivided transportation. *Petrire*, 756 F.2d at 264-65. The first booklet covered travel from Madrid, Spain; to Malaga, Spain; to New York City. The second booklet covered the flight from New York City to Madrid. *Id.* The aircraft crashed en route to New York City. *Id*. at 265. Plaintiff averred that jurisdiction in the United States was permissible under the Convention because each of the two booklets constituted a separate contract with a distinct "place of destination," namely New York City and Madrid, respectively. *Id*. In holding that "there was only one contract and one transportation," the Second Circuit highlighted that the two ticket booklets were issued sequentially; at the same time and place; even though it involved a five-day stopover. *Id*. at 265-66. The court further noted that the relevant inquiry in determining whether multiple ticket booklets "constitute a single contract for purposes of the Treaty are the time and place of issuance of the booklets and the contemplated degree of continuity of the journey being ticketed." *Id.*; *see also Vergara,* 390 F. Supp. at 1269 (finding one undivided trip under the Convention despite six ticket booklets involving eight different airlines partly because the booklets were purchased at the same time and place). The *Petrire* court therefore concluded that plaintiff's destination Madrid, not New York, for purposes of the Convention. *Id*. at 266; *see also Kruger*, 2007 WL 3232443 at *3-6 (analyzing time and location of ticket purchase and anticipated stopover duration).

Similarly, *In re Alleged Food Poisoning* involved air travel on successive carriers. There, plaintiff was issued two travel booklets, the first covering air travel from Riyadh, Saudi Arabia; to Dharhan, Saudi Arabia; to London, United Kingdom; to Washington, D.C.; and New York City,

---

[4] A ticket booklet was essentially a packet consisting of two or more perforated coupons which can be detached and presented for inspection to airport staff during check-in and/or boarding. *See Euland v. M/V Dolphin IV*, 685 F. Supp. 942, 943-44 (D.S.C. 1988); *see also Wallace Bus Forms, Inc. v. UARCO Inc.,* 1986 WL 8960 at *1 (N.D. Ill. 1986), *aff'd sub nom. Wallace Computer Servs., Inc. v. Uarco Inc.,* 824 F.2d 977 (Fed. Cir. 1987).

9

and the second covering the plaintiff's flight from New York to Riyadh. *Id.* at 5. British Airways was the carrier for plaintiff's flight from London to Washington, D.C., but was not involved in the remainder of the trip. *Id.* The court highlighted that, notwithstanding the separate ticket booklets and two carriers, there existed one contract of transportation with one place of destination because plaintiff purchased his tickets at the same time and place from a single carrier. *Id.* at 6. Plaintiff's intermediate stops in the United States were deemed agreed-upon stopping places, not distinct places of destination. *Id*. In rejecting plaintiff's argument that the place of destination for purposes of the Warsaw Convention was Washington, D.C., the Second Circuit held that when the parties "have regarded the transportation as a single, undivided operation, the beginning of that operation is the origin and the end of the operation is the destination." *Id*. (citing *Gayda v. LOT Polish Airlines,* 702 F.2d 424, 425 (2d Cir. 1983)); *See also Haldimann*, 168 F.3d at 1325-26 (holding that tickets issued simultaneously "at a single place" constitute one undivided contract of carriage).

Here, each plaintiff purchased a single contract of transportation for ¥ 2,396 which provided for transportation by a single carrier (Asiana) issued at the same time (January 28, 2013) and place (202 North Zhong Shan Road in Nanjing, China). *See Petrire* 756 F.2d at 266. Plaintiffs' tickets bear sequential numbers. (*See* Tickets at 2-3); *see also Petrire*, 756 F.2d at 266; *In re Alleged Food Poisoning,* 770 F.2d at 6. With regards to the "contemplated degree of continuity of the journey being ticketed," all of the flights were scheduled to occur within a two-week period for flights both into and out of the United States. *Id*.

Based on these "objective facts of the ticketing," the Court thus finds "a single operation of undivided transportation." *See Petrire*, 756 F.2d at 266 (internal quotations omitted.) The sole "place of destination" for purposes of the Convention of a single contract is the ultimate destination, namely Shanghai. *See Id*; *In re Alleged Food Poisoning,* 770 F.2d at 6.[5] Thus,

---

[5] Although not dispositive, the fact that plaintiffs' tickets bear the notation "CONJ" further supports a finding that the place of destination is the "ultimate destination," namely Shanghai. *See In re Alleged Food Poisoning,* 770 F.2d at 6. "CONJ" indicates that these are "conjunction tickets," which refer to two or more tickets used on a single itinerary. (Dkt. No. 813 ¶¶ 6-7, 10-11.) Several federal courts have found that the "place of destination" for purposes of the Convention for a conjunction ticket is the "*ultimate* destination" for the purposes of jurisdiction.

whether plaintiffs' tickets are characterized as "open jaw" is not dispositive. The issue is whether, based on the objective evidence, the parties intended the contract of transportation to be a single undivided transportation with one place of destination (Shanghai), or two separate operations with two different destinations. (San Francisco and Shanghai, respectively).

Plaintiffs contend that the issue presents a matter of first impression because plaintiffs were traveling on open jaw itineraries and Asiana's own policies support the claim that the final destination should be considered San Francisco. Plaintiffs' argument focuses on the incorporation by reference of Asiana's General Conditions into its tickets which define various types of "trips." Thus, a round trip is defined as:

> . . . travel from one point to another and return by the same air route used outbound whether or not the fares outbound and inbound be the same, or travel from one point to another and return by an air route different from that used outbound, for which the same normal through one-way fare is established . . . .

(General Conditions., Art. 1.27.) A circle trip is:

> . . . travel from a point and return there to by a continuous, circuitous air route; provided that where no reasonable direct scheduled air route is available between two points, a break in the circle may be traveled by any other means of transportation without prejudice to the circle trip . . . .

(*Id*., Art. 1.9.) An open-jaw trip "means travel which is *essentially of a round trip nature* but the outward point of departure and inward point or arrival and/or outward point of arrival and inward point of departure . . . are not the same." (*Id*. Art. 1.22 (emphasis supplied).) The General Conditions further state that that the term "'[d]estination' means the ultimate stopping place according to the contract of carriage. *In the case of a round trip or a circle trip, the destination is the same place as the point of origin*." (*Id*. Art. 1.15 (emphasis supplied).) Based on a comparison of these definitions, plaintiffs contend that Asiana thus treats open jaw trips as "two separate trips, obviously having two separate destinations" because open jaw trips are "specifically excluded" and not listed along with round and circle trips as having "the point of

---

*Id*. (emphasis in original). "[W]hen separate tickets are issued for different portions of a trip, if they are issued in conjunction with each other or refer to each other, the destination will always be the last stop." *See Gasca v. Empresa De Transporte Aero Del Peru*, 992 F. Supp. 1377, 1380 (S.D. Fla. 1998).

11

origin" as the "destination." (*See* Opp'n to MTD at 19.) According to plaintiffs, this renders the contract of transportation ambiguous as to whether the tickets are round trip or open jaw, and any ambiguity should be construed against Asiana. (*Id*. at 21.)

Plaintiffs do not persuade. Under Asiana's General Conditions, "Destination" is defined as "the ultimate stopping place according to the contract of carriage." The fact that the General Conditions may specify an example does not change the definition. In addition, the General Conditions state that "[n]othing in these Conditions of Carriage . . . modifies any provision of the [Warsaw or Montreal] Convention." (General Conditions, Art. 2.1.) This Court is bound in light of the controlling Ninth Circuit and other case law interpreting the Convention discussed above to define the location of the "ultimate destination" based on the principles discussed herein. Asiana's omission of open-jaw trips from the examples of trips for which the "destination is the same place as the point of origin" is not dispositive.

Further, as discussed above, plaintiffs here purchased their tickets at the same time and place and the tickets bear sequential numbers. The tickets also indicate that Asiana was the only carrier involved in providing air travel. Any ambiguity as to the precise characterization of the tickets does not change the rule. What matters is that the parties contemplated a "single operation of undivided operation transportation." *Petrire*, 756 F.2d at 265-66; s*ee also In re Alleged Food Poisoning*, 770 F.2d at 6. Thus, where the objective facts show that the transportation was part of a single operation, only one destination exists, the "end of the operation." *In re Alleged Food Poisoning,* 770 F.2d at 6; *Gayda,* 702 F.2d at 425. Here, "the end of the operation" is Shanghai. *Id*.

The Court thus holds that plaintiffs have failed to satisfy their burden of showing that this court has jurisdiction pursuant to the "place of destination" prong of Article 33.[6]

2. *Principal and Permanent Residence*

The Court now turns to whether plaintiffs have carried their jurisdictional burden pursuant to the fifth prong of Article 33, which bases jurisdiction on passengers' principal and permanent

---

[6] The Court notes that plaintiffs raise equitable augments but provide no authority for the Court to ignore the Montreal Convention for equitable reasons. The Court declines to do so.

12

residence. *See* Montreal Convention Art. 33(2). Plaintiffs claim that jurisdiction is proper because plaintiffs resided in the United States while receiving medical care for approximately three months following the crash. According to plaintiffs, the United States became the *de facto* principal and permanent residence of the plaintiffs while Ms. Zhang underwent and recovered from brain surgery.

Pursuant to Article 33(2) "principal and permanent residence" is "the one fixed and permanent abode of the passenger at the time of the accident." *See also In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp.2d 832, 836 (N.D. Cal. 2010). Plaintiffs' admit in their operative pleading that "Plaintiffs' principal and permanent residence is in People's Republic of China." (Notice of Adoption of MC ¶ 3.) Plaintiffs cite no authority for the proposition that residing in the United States for three months while receiving medical care is sufficient to establish principal and permanent residence for the purposes of Article 33. More importantly, plaintiffs' time in the United States *subsequent* to the accident is not relevant to establishing principal and permanent residence because residence under Article 33 is determined "at the time of the accident." *See In re Air Crash Over Mid-Atl.*, 760 F. Supp. 2d at 836. The Court recognizes that Ms. Zhang's time spent in the United States receiving medical care was difficult to endure. However, the Court cannot find that plaintiffs had a principal and permanent residence in San Francisco "at the time of the accident." *See id*.

Therefore, the Court finds that plaintiffs did not have a principal and permanent residence in the United States at the time of the crash. Accordingly, plaintiffs have failed to demonstrate that this Court has jurisdiction under the fifth jurisdictional prong.

Accordingly, defendant's motion to dismiss is **GRANTED**.

### B. Motion for Leave to Amend

Plaintiffs seek leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) alleging that Asiana negligently failed to provide adequate care to Ms. Zhang. In light of the Court's ruling on defendant's motion to dismiss, this Court lacks jurisdiction to hear plaintiffs' claims. Therefore the motion for leave to amend is **DENIED** as moot.

//

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is **GRANTED** and plaintiffs' motion for leave to amend is **DENIED** as moot.

This Order terminates Dkt. Nos. 780, 800.

**IT IS SO ORDERED**.

Dated: August 14, 2017

*[signature]*
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**